UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JANICE PAYNE, | No. C 08-2098 WDB |
| Plaintiff, | |
| v. | ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION FOR ATTORNEYS' FEES |
| BAY AREA RAPID TRANSIT DISTRICT, | |
| Defendant. | |
| _____/ | |

## INTRODUCTION

On April 22, 2008, plaintiff filed her Complaint for Damages and Injunctive Relief, alleging denial of disabled access to public facilities under federal and California law.

The parties negotiated a resolution to their disputes, and the Court entered a Consent Decree and a Stipulated Judgment on March 18, 2009, and April 13, 2009, respectively. The parties agreed to submit plaintiff's demand for attorneys' fees to the Court via a formal motion.

On April 20, 2009, plaintiff filed her Motion for an Award of Attorneys Fees, Litigation Expenses, and Costs. Plaintiff seeks a base fee award in the amount $60,512.00 and seeks an enhancement of those fees by a .5 multiplier. Motion at 23;

1

Supp. Rein Decl., at 5.[1]  Plaintiff also seeks costs in the amount $9,096.00.  Defendant does not dispute plaintiff's entitlement to a fee award but challenges the amount requested on a variety of bases.

For the reasons stated below, the Court AWARDS plaintiff attorneys' fees in the amount $41,004.75 and costs in the amount $3,798.76.  The Court DENIES plaintiff's request for a multiplier.

## DISCUSSION

### I. Legal Standards / Applicable Law

The Americans With Disabilities Act provides for "a reasonable attorney's fee, including litigation expenses, and costs."  42 U.S.C. §12205.  Plaintiff also is entitled to attorneys' fees in connection with her state claims.  See, California Civil Code §55 and California Code of Civil Procedure §1021.5.  Defendant does not dispute plaintiff's status as a "prevailing party" and concedes her entitlement to reasonable attorneys' fees, costs and expenses.  Opposition at 10.  Defendant objects, however, to the amount of the fee plaintiff requests as "unreasonably inflated" and argues that this case does not justify application of a multiplier.

Under both federal and state law the starting point for determining an award of attorneys' fees is calculation of the "lodestar."  In this setting, the Court calculates the lodestar by multiplying the number of hours counsel reasonably expended on compensable tasks by a reasonable hourly rate.  *Fisher v. SJB P.D. Inc.*, 214 F.3d 1115, 1119 (9th Cir. 2000); *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983); *PLCM Group Inc., v. Drexler*, 22 Cal. 4th 1084, 1095 (2000).

To determine appropriate hourly rates, we look to rates prevailing in the San Francisco Bay Area for similar services performed by attorneys of reasonably comparable

---

[1] Plaintiff originally sought a 1.5 to 2.0 multiplier.  Plaintiff's Reply indicates that she now has scaled down her request.  Supp. Rein Decl., at ¶12.

skill, experience, and reputation. *Missouri v. Jenkins*, 491 U.S. 274, 286 (1989). This standard also applies to the rates charged for work performed by paralegals and law clerks. *Missouri*, 491 U.S. at 286-87.

Next, the Court determines whether the number of hours expended on compensable tasks was reasonable. *Davis v. City and County of San Francisco*, 976 F.2d 1536, 1543 (9th Cir. 1992) *vac'd in part as to unrelated issue by* 984 F.2d 345 (9th Cir. 1993). The court may not compensate plaintiff for hours that exceed the amount of time a reasonably competent attorney would take to accomplish the particular task. *Dennis v. Chang*, 611 F.2d 1302, 1308 (9th Cir. 1980). The court eliminates from the fee request any excessive, duplicative or unnecessary hours.

"The fee applicant bears the burden of establishing entitlement to an award and documenting the appropriate hours expended and hourly rates." *Hensley*, 461 U.S. at 437. The Court may reduce plaintiff's fee award where the documentation of hours is inadequate. *Hensley,* 461 U.S. at 433. Plaintiff's counsel must maintain billing records in a manner that will apprise the court of the nature of the activity performed and "that will enable a reviewing court to identify distinct claims." *Id.*, 461 U.S. at 437.

The lodestar calculation is a presumptively reasonable fee award. *Fischel v. Equitable Life Assurance Soc. of the U.S.,* 307 F.3d 997, 1007 (9th Cir. 2002) (common fund case). However, under some circumstances the Court also will consider whether certain factors require an adjustment, either upward or downward, to the lodestar calculation. *E.g., Morales v. City of San Rafael*, 96 F.3d 359, 363-64, n. 9 (9th Cir. 1996); *Ketchum v. Moses*, 24 Cal. 4th 1122, 1132 (2001). See also, discussion section III, *infra*.

## II. <u>Lodestar</u>

Defendant objects to the size of plaintiff's fee request generally. In defendant's view the substance, complexity and value of Ms. Payne's case do not justify some 140 attorney hours and thirteen hours of work by a paralegal.

The Court is not comfortable making a generic, wholistic judgment of the kind defendant seems to want the Court to make. The value of a case is something that legitimately may vary depending on the person who is doing the valuation. Furthermore, when a case is pursued under civil rights statutes enacted by Congress and the legislature of the state of California, it is not appropriate for a court to pass judgment in an abstract manner about the "value" of the plaintiff's claims, and it is clear that it is not appropriate for the court to measure the value of a civil rights case solely by the economic recovery that it yields.

We are aware that defendant's counsel appears to have committed about eighty hours of lawyer time in contrast to plaintiff's 140 hours. Transcript of May 20, 2009, hearing. We conclude, however, that that comparison is not materially instructive because plaintiff retains the burden of proof and is required to retain and work with experts. In this kind of case it is not clear that the legal burdens the two sides face are equal or even comparable.

For these reasons, we do not approach our review of plaintiff's counsel's billing records from a "gestalt" perspective.[2] Instead, we have carefully reviewed those records and have made specific determinations about whether particular kinds of activities justify the amount of attorney or law clerk hours committed to them.

---

[2] An additional reason that we do not rely principally on an abstract sense of the substance, complexity and value of plaintiff's case is the Court's experience that the amount and character of lawyering activity that is reasonably necessary can vary markedly, even between cases that appear fairly similar on their surface, due to, among other things, different responses in litigation conduct by the opposing party.

4

### A.     **Billing Rates**

Defendant does not dispute the billing rates charged by Mr. Rein and Ms. Ostil. Defendant contends that the rates charged by Ross Meltzer, Ann Winterman, and Aaron Clefton exceed the market rates for similarly qualified attorneys and law clerks. Opposition at 3 and 6-7.

Mr. Meltzer is a personal injury attorney who declares that he currently charges at the rate of $350 per hour. Meltzer Decl., at ¶¶3 and 4. While Mr. Meltzer asserts that his rate is commensurate with that of comparably experienced personal injury attorneys in our area, he has submitted no additional evidence in support of this declaration. Plaintiff has the burden to submit evidence that adequately supports her request, and, in this instance, the Court does not have sufficient experience involving tort cases to judicially notice the prevailing market rate for personal injury lawyers in a solo practice in this area. Given plaintiff's shortfall in support and the Court's limited exposure to the relevant market, the Court is not comfortable approving a rate of more than $300.00 per hour for Mr. Meltzer's work on this case.[3]

The Court need not rule on the appropriate rate for work conducted by Ms. Winterman. For the reasons stated in section B, *infra*, the Court disallows all work performed by Ms. Winterman.

Plaintiff requests a rate of $155.00 per hour for work performed by "law clerk," Aaron Clefton. The reasonableness of the prevailing rate for paralegal work is in part a function of the complexity and challenges of the tasks he is asked to do. We have not been persuaded that the tasks Mr. Clefton was called on to do in this case were especially

---

[3]In her Reply, plaintiff attempts to rely on the declaration of Richard Pearl. Rein Decl., at Ex. 19. Mr. Pearl's declaration is of limited utility with respect to the appropriate rate for work by Mr. Meltzer. The figures provided by Mr. Pearl set forth rates charged by attorneys for "complex litigation," not for relatively straightforward personal injury cases. Additionally, Mr. Pearl lists a variety of cases without describing the subject matter of the cases or qualifications of the attorneys. Finally, Mr. Pearl's list of rates charged by specifically identified law firms is not relevant here because he lists only large firms or high profile boutique practices.

5

challenging or demanding.[4]  Plaintiff has not submitted sufficient evidence supporting the position that law clerks doing the type of work performed by Mr. Clefton in this action would command $155.00 per hour.

Although the *Farhat* court permitted a plaintiff to recover $155/hour for work by a law clerk at an Oakland firm, the defendant in *Farhat* did not challenge an award at that rate, and *Farhat* does not disclose the relevant law clerk's background.  *Farhat v. Hartford Life and Accident Ins., Co.,* 2006 WL 2521571, *6 (N.D. Cal).  Additionally, in contrast to plaintiff's case, counsel in *Farhat* filed competing motions for summary judgment that were "thick," "dealt with relatively complicated issues," and included "numerous exhibits and declarations."  *Id.,* at *5.

We think, based on our exposure to fee requests for paralegal/law clerk work by other firms in other cases, that the prevailing market rate for the kind of work performed by Mr. Clefton in this case would not exceed $125.00 per hour.

### B.     Number of Hours Reasonably Expended
#### 1.     Work performed by Paul Rein

The majority of fees sought by plaintiff are attributable to work performed by Mr. Rein.  Defendant objects to the fees charged by Mr. Rein, alleging that they are "over-inflated" in light of the simple, straightforward nature of the plaintiff's case.  Opposition at 3-6.

As a general matter, defendant complains that Mr. Rein spent too much time (14.7 hours) participating in meetings and telephone calls with co-counsel and with "access expert" Barry Atwood.  Defendant also objects to four specific tasks.  Defendant alleges that Mr. Rein spent too much time in connection with drafting the Complaint because this document contains substantial boilerplate language used by Mr. Rein in prior matters.

---

[4]The most extensive project undertaken by Mr. Clefton appears to be 5.3 hours spent drafting the plaintiff's settlement conference statement.  The remaining work does not appear legally or procedurally complex.

6

Defendant also argues that the Motion for Attorneys' Fees contains boilerplate language and that the significant portions of the motion that addressed plaintiff's status as a prevailing party and the reasonableness of Mr. Rein's hourly rate were unnecessary because defendant does not contest either of those propositions. In addition, according to defendant, the Court should disallow Mr. Rein's time associated with the December 10, 2008, settlement conference because the settlement conference was "moot . . . and could not proceed" as a result of plaintiff's failure to provide defendant with appropriate medical records. Finally, defendant asks the Court to disallow one hour of time Mr. Rein spent traveling to court for a case management conference that had been continued.

The Court cannot conclude that, at a general level, Mr. Rein devoted a clearly inflated amount of time to this matter. We recognize that the fee Mr. Rein requests is substantial and that this matter was resolved with little formal litigation activity (*i.e.*, no formal discovery, no motions, and no trial work). However, the size of plaintiff's fee request is largely a function of Mr. Rein's substantial hourly rate. Mr. Rein expended 103.5 hours in connection with this matter. Put into perspective, Mr. Rein worked the equivalent of 2.6 forty-hour work weeks to investigate Ms. Payne's case, draft and file a complaint, analyze the value of the case and the necessary access remedies, pursue settlement with Mr. Hazelwood, prepare for and attend a settlement conference, participate in drafting the consent decree, and draft the fee motion. When considered in this manner, we cannot say that spending 2 ½ weeks to take a simple case from start to finish is obviously excessive. We also note that, although there appear to be a significant number of meetings and telephone calls between "co-counsel," the billing records suggest that plaintiff does not always seek reimbursement for each attorneys' time attending these meetings – *i.e.*, we have noted multiple 'meetings with co-counsel' for which only one attorney appears to have billed. For these reasons, the Court declines to reduce plaintiff's fee award on the generalized assertion that it is inflated.

1    We turn to the challenges to specific tasks performed by Mr. Rein and RULE as
2  follows.
3    The Court DISALLOWS one hour spent on July 20, 2008, preparing for and
4  traveling to the Court for a case management conference that had been rescheduled.  The
5  Court also disallows $87.00 for time spent on June 7, 2007, apparently taking film in for
6  processing.  Rein Decl., at Ex. 4 ("Photos to development").  Using Mr. Rein to perform
7  this ministerial task effectively raised the presumably minimal cost of developing
8  photographs by $87.00.  Absent evidence to the contrary, this is the kind of task that a
9  non-billing staff member could have accomplished.
10    Mr. Rein expended 4.2 hours drafting the complaint.  The Court awards plaintiff
11  three (3) hours of Mr. Rein's time in connection with this task.  Based on the Court's
12  review of the Complaint, very little of the document pertains to the facts that are unique
13  to plaintiff's case.  Most of the document consists of boilerplate allegations used by Mr.
14  Rein's firm in multiple cases.  In the Court's judgment, given Mr. Rein's expertise in this
15  area he did not need 4.2 hours to draft the complaint filed in this action.  Because the time
16  spent drafting the relatively simple complaint will be compensated at Mr. Rein's
17  substantial hourly rate, plaintiff is being sufficiently compensated for work performed
18  drafting this complaint.
19    The Court allows 5.5 hours for the time Mr. Rein spent in connection with the
20  settlement conference on December 10, 2008.  The Court concludes that a reasonably
21  competent attorney with Mr. Rein's expertise would have expended 1.5 hours drafting
22  plaintiff's confidential settlement conference statement.  The Court also reimburses .5 of
23  an hour for time Mr. Rein reasonably could spend reviewing the file in preparation for the
24  settlement conference.  Given Mr. Rein's significant expertise, he could adequately
25  prepare for a simple case such as this by reviewing his settlement conference statement
26  and Mr. Atwood's report.  The Court awards 2 hours for Mr. Rein's travel time and 1.5
27  hours for attending the conference.  We are aware that the conference spanned 2.5 hours.
28

1  See, Minute Order following December 10, 2008, settlement conference.  However, the
2  Court eliminates one hour of Mr. Rein's time attending the conference because the
3  possibility of making the conference productive was compromised badly by counsel's
4  failure to produce plaintiff's medical records before or at the settlement conference.
5      The Court also allows 2 hours for time spent communicating with access expert
6  Barry Atwood.  Given Messrs. Atwood's and Rein's long standing relationship and
7  substantial expertise in this subject area, as well as the straightforward nature of Ms.
8  Payne's case, we cannot say that a competent attorney in Mr. Rein's situation would have
9  needed to spend more than two hours discussing the access issues with Mr. Atwood.
10      The Court also eliminates some hours in connection with Mr. Rein's work on
11  plaintiff's fee request.  Plaintiff seeks reimbursement of 26.4 hours in connection with Mr.
12  Rein's work on her request for fees (not including Mr. Rein's time attending the hearing
13  on May 20, 2009).
14      The Court finds that plaintiff is entitled to reimbursement of 6 hours in connection
15  with drafting the Motion for Attorneys Fees.  Much of the motion is boilerpate that has
16  been used in other cases for similar purposes.  Moreover, even allowing for the fact that
17  Mr. Rein was not aware that defendant would not contest Mr. Rein's and Ms. Ostil's
18  hourly rates, Mr. Rein expended an excessive amount of time justifying counsel's hourly
19  rates.  Counsel was aware that his motion would be heard by the undersigned, who has
20  extensive experience with Mr. Rein's work on access cases and is familiar with Mr. Rein's
21  background and credentials.
22      The Court also awards 5 hours in connection with reviewing defendant's
23  opposition and drafting plaintiff's reply, and 1.25 hours for attending the May 20, 2009
24  hearing.
25      In sum, the Court has disallowed 21.65 hours of Mr. Rein's time but ALLOWS
26  81.85 of his hours at the uncontested rate of $435 per hour.

9

## **2.     Work performed by Attorneys other than Mr. Rein**

Defendant objects to the number of hours expended by attorneys other than Mr. Rein. In defendant's view this work was largely duplicative, unnecessary, and evidence of over-staffing.

Plaintiff seeks reimbursement for time spent by four lawyers in connection with her case (Mr. Rein, Ms. Ostil, Mr. Meltzer and Ms. Winterman). Plaintiff has failed to justify billing four separate lawyers for this relatively straightforward case. Mr. Rein heads a small office. The challenges of coordination in such a setting are not substantial. Moreover, Mr. Rein has forty years of experience and is capable of completing quite competently all the tasks necessary to prosecute plaintiff's case without input from other attorneys. Accordingly, plaintiff has not demonstrated a need for anything other than minimal contributions from and coordination with other lawyers.

We disallow any recovery for work performed by Ann Winterman in part because her participation is not justified as a general matter for the reasons just stated. We also disallow Ms. Winterman's hours because, without adequate explanation, plaintiff did not submit properly authenticated copies of Ms. Winterman's time records. Moreover, Ms. Winterman's records were not submitted until after defendant had filed its opposition, thus depriving defendant of an adequate opportunity to review and respond to them. Therefore, the Court DENIES plaintiff's request for Ms. Winterman's fees in the amount $2,588.00.

We also reduce the hours sought for work completed by Ms. Ostil. Based on our review of Ms. Ostil's timesheets, she was not responsible for a significant portion of the written work relating to this case. Ms. Ostil appears to have been involved in drafting a joint case management conference statement, initial disclosures, a stipulation to continue a case management conference, and in considering ADR options. None of these tasks appear particularly difficult in the context of this case. Moreover, the evidence supports an inference that Mr. Clefton also contributed in some measure to many of these tasks --

suggesting that Ms. Ostil's role may have been supervisory. As a general matter, we cannot say that it is reasonable to shift to the opposing party the costs of keeping four attorneys apprised of every aspect of a straightforward case. Accordingly, we disallow 50% of the hours billed by Ms. Ostil, thus allowing 8.5 hours she billed at the rate $300 per hour.

Plaintiff seeks reimbursement for 15.7[5] hours of time Mr. Meltzer spent obtaining, reviewing and summarizing medical records, analyzing plaintiff's injuries, consulting with Mr. Rein about plaintiff's damages, and attending the site inspection and settlement conference. Meltzer Decl., at ¶2.

Defendant objects generally to the fee request for Mr. Meltzer's time, asserting that "[i]t is unclear how the 16.2[6] hours billed were relevant" and that "Mr. Meltzer achieved little for the plaintiff because he had no involvement in actual issues that were central to plaintiff's case." Opposition at 7.

The Court allows six (6) hours of Mr. Meltzer's time at the rate of $300.00 per hour. We disallow Mr. Meltzer's time in connection with attending the settlement conference. Mr. Meltzer is responsible for plaintiff's failure to produce the correct medical records before or at the conference. His error rendered useless the only aspect of the settlement conference to which his presence was relevant. We deny defendant's request for a ruling disallowing completely Mr. Meltzer's time attending the site inspection. A reasonable personal injury attorney would inspect the location of his client's accident. Therefore, we award 1.5 hours for attending the site inspection. We also allow 1.5 hours to obtain and review plaintiff's medical records, one hour to confer

---

[5] Plaintiff's Motion seeks to recover fees for 16.4 hours of work performed by Mr. Meltzer. Motion at 23. In his declaration Mr. Meltzer states that he spent 16.4 hours in connection with this litigation. Meltzer Decl., at ¶4. However, his attached time sheets set forth the total hours as 16.2. Meltzer Decl., at Ex. 1. When we add the individual entries on Ex. 1 our calculations reveal a total of 15.7 hours spent in connection with the litigation.

[6] See previous footnote.

11

with Ms. Payne, one hour to confer with Mr. Rein, and one hour for Mr. Meltzer to draft his declaration in support of plaintiff's fee request.[7]

### 3. Work performed by Aaron Clefton

Defendant asserts a generic objection to "the number of hours [Mr. Clefton] allegedly spent working on this case." Opposition at 7. However, defendant fails to identify any specific time entry that defendant contends demonstrates an unreasonably long undertaking. The Court has identified two requests that appear to exceed a reasonable number of hours. As we read the billing records, Mr. Clefton expended a total of one hour and twelve minutes in connection with the "Notice of Need for ADR phone conference." Clefton Decl., at Ex. 1. This is a spare, one-page form with only three fields of inquiry. See Docket Number 12. We reduce Mr. Clefton's time in connection with this entry by 50%, disallowing .6 of an hour.

Additionally, we award only one hour of Mr. Clefton's time spent drafting the settlement conference statement. By our calculations, Mr. Clefton billed 5.3 hours in connection with this task and Mr. Rein billed 3 hours for the same. In the Court's view most of this document would contain boilerplate language from Mr. Rein's many other access cases. Only a small portion of the statement would be specific to the facts of this case. Ms. Payne's case is a straightforward access case, and we think that Mr. Rein could have completed this document in half the time he billed. Plaintiff has not demonstrated a basis for also awarding 5.3 hours of non-lawyer time for drafting the settlement conference statement in this case.

In sum, the Court allows 8.4 hours of Mr. Clefton's time at the rate of $125.00 per hour.

---

[7] The Court also notes that Mr. Meltzer had multiple billing entries for .2 of an hour for "receiving letters." An attorney may not bill for time "receiving" any item. Attorneys may only bill for performing (reasonable necessary) work.

### III. Request for a Multiplier

Plaintiff asks the court to enhance her attorneys' fee award based solely on contingency risk. Reply at 12-14. The Supreme Court has held that "enhancement for contingency is not permitted under [federal] fee-shifting statutes." *City of Burlington v. Dague*, 505 U.S. 557, 567 (1992). Plaintiff could have access to a multiplier, however, in connection with her state claims. *Ketchum III v. Moses*, 24 Cal. 4th 1122 (2001).

Originally, plaintiff asked the court to enhance her fees by a factor of 1.5-2.0. Motion at 12. However, in her Reply, plaintiff reduced her request to a multiplier of .5. Reply at 15. For the reasons explained herein, the Court DENIES plaintiff's request for an enhancement based on contingency risk.

Enhancements for contingency risk are designed to compensate lawyers who take contingency fee cases for the risk of non-payment and/or for an anticipated delay in receiving payment. *Ketchum*, 24 Cal. 4th at 1138. In determining whether a case justifies the application of a multiplier the court looks to the specific circumstances of that case. In our view, the Court must consider, among other things, the likelihood that plaintiff will establish liability and the likelihood that doing so will provide reasonably timely access to compensation. Ms. Payne presented a straightforward, strong case with respect to liability, and the extent of her damages was modest and was not medically complex. Furthermore, Ms. Payne's claims were predicated on multiple statutes that provide for fee-shifting, and she sued a defendant that is a very stable "deep pocket." Accordingly, we think that the risk of failure was extremely small and that the likelihood of ultimately receiving reimbursement for attorneys fees was great.[8]

We agree that counsel faced a non-diminimis risk of some delay in receiving payment. However, plaintiff's counsel is aware that courts may compensate counsel for

---

[8]Although plaintiff points to defendant's litigation activities in *George v. BART* as support for her contention that counsel could not be sure when he might recover his fees, Ms. Payne's case is not sufficiently similar to the case presented in *George* to convince the Court that a multiplier is warranted on that basis.

13

1  delay in payment in a variety of ways, *e.g.*, by reimbursement of counsel's past work at
2  his present hourly rate. Because there are foreseeable alternate mechanisms that courts
3  may use to mitigate the risk of delay, risk of delay in obtaining payment in a case such as
4  this is not the kind of risk that is likely to discourage good lawyers from taking cases.

5  Mr. Rein will be compensated at a substantial hourly rate for a case that
6  foreseeably was straightforward and short-lived and that did not involve formal
7  discovery, motions or trial work. Ms. Payne's case presented no novel legal issues,
8  involved no important legal rulings, and required almost no legal research. Prosecuting
9  Ms. Payne's case would not have precluded or discouraged plaintiff's counsel from taking
10 other work. At Mr. Rein's level of compensation there is no reason to believe that good,
11 competent lawyers would decline to represent clients in this kind of setting if the Court
12 denies plaintiff's request for a multiplier.

13 For the above reasons, Ms. Payne has not persuaded us that application of a
14 multiplier is justified.

16 **IV.   Costs**
17     **A.   Costs incurred by Rein firm**
18 Plaintiff seeks reimbursement of $5,661.25 for the fee charged by her "access
19 expert," Mr. Atwood. Motion at 23; Rein Decl., at Ex. 7.

20 Defendant objects to the number of hours charged by Mr. Atwood in connection
21 with downloading photographs, drafting his report, and attending the settlement
22 conference. We agree that without additional explanation 2.5 hours to "Download photos
23 from formal site inspection and prepare them for insertion into report" appears excessive.
24 The Court allows only .5 hour for this task.[9] We also sustain defendant's objection to the
25 time spent by Mr. Atwood drafting his report and attending the settlement conference.

---

[9] We note that the records attached for Mr. Danz indicate that he downloaded photos from the site inspection and emailed them to Mr. Atwood in .35 hours.

14

Plaintiff has not justified 11 hours of Mr. Atwood's time drafting his report. Two thirds of Mr. Atwood's report consist of nothing more than a direct restatement of the law. Because only one third of his report reflects case-specific work by Mr. Atwood, we allow 5 hours in connection this task.

We also allow 2.5 hours for Mr. Atwood's time attending the settlement conference. At the hearing on May 20, 2009, Mr. Hazelwood stated that before the settlement conference began he notified Mr. Rein that the parties had an agreement with respect to the essential terms for injunctive relief and that, therefore, the settlement conference need focus only on damages and attorneys fees. Transcript May 20, 2009 hearing. Accordingly, while it was reasonable for Mr. Atwood to plan to attend the settlement conference, once Mr. Rein learned that the parties had settled the essential injunctive terms, Mr. Atwood's presence no longer was necessary. The Court reimburses plaintiff for 2 hours of Mr. Atwood's travel time and .5 of an hour attending the conference.

The Court also allows 2 hours for Mr. Atwood's work drafting a memorandum about the configuration of elevator call buttons. Mr. Atwood has more than 20 years experience working with access cases. Supp. Rein Decl., at Ex. 23. Plaintiff has not demonstrated that the configuration of "hall call buttons" is sufficiently complex to justify 4.25 hours of time from someone with Mr. Atwood's expertise.

Mr. Atwood also billed 1.75 hours for editing the transcript from the site inspection. Plaintiff does not explain this billing entry, and the necessity and utility of this task are not apparent to the Court. We disallow 1.25 hours in connection with Mr. Atwood's work on this task.

For the above reasons, we allow 18.35 hours of Mr. Atwood's time at the rate of $175.00 per hour.

Defendant does not expressly object to the fee sought for work performed by "access construction expert" Karl Danz. Nonetheless, the Court questions the need for an

expert in addition to Mr. Atwood in this case. As a general matter, using the services of someone like Mr. Danz is not objectionable per se. However, the use of any expert must be justified by the specific circumstances and needs of the case. Given the straightforward character of the access problems that caused Ms. Payne's injuries, it should have been foreseeable that Mr. Danz's input could have been adequately secured by one or two phone calls.[10] We allow $150.00 for costs incurred in connection with Mr. Danz's work.

Plaintiff also seeks $1,374.00 pertaining to costs other than expert witness fees.[11] Rein Decl., at ¶21; Supp. Rein Decl., at ¶12. The Court allows reimbursement of the Court's filing fee and the cost for Service of process. Reimbursement of these items is authorized under 28 U.S.C. §1920 and Local Rule 54-3(a). The Court also allows $27.51 for Federal Express charges for documents sent to the Court. Rein Decl., at Ex. 7. These are out of pocket expenses normally charged to the client. The remaining costs are for document copying, additional overnight deliveries, and computer research. Rein Decl., at ¶¶21 and 55 and Ex. 7 and Supp. Rein Decl., at ¶11. Plaintiff has not submitted invoices to support her request for the remaining charges. Although Mr. Rein testifies to the total amount of these charges, without a description of the number of pages copied, the number of overnight deliveries, and the length of time spent doing on-line research, the Court cannot assess whether the amount sought for these charges is reasonable.

The Court, therefore, allows $437.51 for non-expert costs and disallows the remainder ($936.49).

---

[10] Plaintiff does not describe Mr. Danz's contribution to the resolution of this case. Based on our review of the evidence, it appears that Mr. Danz was to provide a cost estimate for work to be contemplated under the consent decree. However, as far as we can tell Mr. Danz's estimate was limited to the cost of installing a new door. Rein Decl., at Ex. 7.

[11] We encountered another math problem in plaintiff's documentation when reviewing costs. Mr. Rein asserts that plaintiff seeks costs including $1,145.00 for litigation expenses other than experts plus $5,662.00 for Mr. Atwood and $923.00 for Mr. Danz totaling $8,036.00. Rein Decl., at ¶21 and Motion at 23. However, when the Court adds these three figures they total $7,730.00 – a sum $306.00 less than plaintiff seeks.

16

**B.     Costs incurred by Mr. Meltzer**

Plaintiff seeks costs in the amount $831.17 incurred by Mr. Meltzer's office. Plaintiff has not submitted evidence that sufficiently supports this request. In his declaration Mr. Meltzer states that he has accrued "$831.17 in costs in obtaining the medical records described above." Meltzer Decl., at ¶5. These medical records are not in fact "described" in Mr. Meltzer's declaration, and there is no invoice itemizing the components of the cost request. In addition, Exhibit 1 to Mr. Meltzer's declaration makes the inconsistent statement that Mr. Meltzer's total costs amount to $602.22. Because plaintiff's request for costs incurred by Mr. Meltzer is not adequately supported by the evidence, the Court DENIES plaintiff's request for these costs.

## CONCLUSION

For the reasons stated above, the Court GRANTS in part and DENIES in part plaintiff's Motion for Attorney Fees, filed April 20, 2009.

The Court AWARDS plaintiff attorneys fees in the amount $41,004.75 and costs in the amount $3,798.76. The Court DENIES plaintiff's request for a multiplier.

IT IS SO ORDERED.

Dated:   June 5, 2009

_____
WAYNE D. BRAZIL
United States Magistrate Judge